In the Matter of Edmond A. DiSANDRO.

No. 96–356–M.P.

Supreme Court of Rhode Island.

July 29, 1996.

David Curtin, Chief Disciplinary Counsel, for Petitioner.

Lauren Jones, Robert Smith, Providence, for Respondent.

## OPINION

PER CURIAM:

This matter is before the court pursuant to a decision and recommendation of the Supreme Court Disciplinary Board (board) that the respondent, Edmond A. DiSandro, be publicly censured. Article III, Rule 6(d), of the Supreme Court Rules of Disciplinary Procedure provides in part:

"If the [Disciplinary] Board determines that a proceeding * * * should be concluded by public censure * * * it shall submit its findings and recommendations, together with the entire record, to this Court. This Court shall review the record and enter an appropriate order."

The facts giving rise to these proceedings are as follows. In 1977 Maria del Rosario Vallinoto (Vallinoto) married Dennis Ledo. In 1987 the husband filed an action for divorce against Vallinoto in the Family Court. Among the issues involved in the divorce case were custody of a minor child of the marriage and distribution of the marital assets.

Vallinoto retained the services of an attorney to represent her in the divorce filed by her husband. She quickly became dissatisfied with the quality of that attorney's representation and discharged him approximately one month later. She retained a second attorney but discharged that attorney after approximately two months. In May of 1987 she retained the services of respondent, who represented her to the conclusion of the divorce proceedings. The record discloses that Vallinoto received custody of the minor child of the marriage and was awarded approximately 60 percent of the marital assets.

In January of 1991 Vallinoto filed a multi-count civil action in the Superior Court against respondent and his firm, alleging, *inter alia*, legal malpractice, battery, deceit,

negligence, and the intentional infliction of emotional distress. A disciplinary complaint was also filed on her behalf with the Supreme Court Disciplinary Counsel.[1] The civil action resulted in a jury verdict in favor of Vallinoto in the amount of $225,000. *Vallinoto v. DiSandro*, C.A. 91–390. These disciplinary proceedings commenced upon the conclusion of the civil action before the Superior Court.

The issue before the disciplinary board was whether respondent violated the Disciplinary Rules of the Code of Professional Responsibility and the Rules of Professional Conduct during his representation of Vallinoto.[2] It is undisputed that during the course of the representation of Vallinoto, respondent and Vallinoto engaged in sexual relations. What is disputed between the parties is whether the sexual relations were consensual or the result of coercion on the part of respondent.

■ The board concluded that the sexual relations between respondent and Vallinoto were consensual. In reaching this conclusion, the board heard the testimony of Vallinoto and of respondent and had the opportunity to observe their demeanor and to assess their credibility. Vallinoto testified that she and respondent acted as boyfriend and girlfriend in front of others and that she was cordial to respondent's office staff. A friend of Vallinoto's testified at the disciplinary hearing that Vallinoto had told her that she was dating respondent. Vallinoto presented respondent with gifts, including a Christmas gift and a tape of love songs. The documentary exhibits before the board included a birthday card from Vallinoto to respondent with the written notation "Love, Rosario" and another card with the printed notation "You've got me right where I want me."[3]

■ Relying upon a conclusion that respondent had engaged in consensual sexual relations with his divorce client, the board recommended that respondent be publicly censured for violating Disciplinary Rule 5–101(A) of the Code of Professional Responsibility and Rule 1.7(b) of the Rules of Professional Conduct. For the reasons set forth below, we agree.[4]

Disciplinary Rule 5–101(A) provides, in pertinent part: "Except with the consent of his client after full disclosure, a lawyer shall not accept employment if the exercise of his professional judgment on behalf of his client will be or reasonably may be affected by his own financial, business, property, or personal interests."

Rule 1.7(b) of the Rules of Professional Conduct is substantially similar to Disciplinary Rule 5–101(A). Rule 1.7(b) provides, in pertinent part:

"A lawyer shall not represent a client if the representation of that client may be materially limited * * * by the lawyer's own interests, unless:

(1) the lawyer reasonably believes the representation will not be adversely affected; and

1. The disciplinary board elected to defer action on the disciplinary complaint until resolution of the civil action. This deferral is authorized by Article III, Rule 9 of the Supreme Court Rules.

2. On November 1, 1988, this court adopted the Rules of Professional Conduct to become effective November 15, 1988, as the ethical standard for attorneys practicing law in this state. *In re Rhode Island Rules of Professional Conduct* (order Nov. 1, 1988). The rules replaced the prior Code of Professional Responsibility. *Id.* As respondent's representation of Vallinoto occurred while both the code and the rules were in effect, he was charged with ethical violations under both standards.

3. The evidence presented to the Superior Court, tried before a jury, and that presented to the disciplinary board was significantly different. At the civil trial Vallinoto testified that she had been "raped" 200 times by respondent. In the disciplinary proceeding, however, she acknowledged there were far fewer incidences of sexual contact between her and respondent. The doctrine of collateral estoppel was not available to the board to give preclusive effect to the findings of the jury, since the issues in the civil action and the disciplinary proceeding were materially different. *E.W. Audet & Sons, Inc. v. Fireman's Fund Insurance Co.*, 635 A.2d 1181, 1186 (R.I.1994). Additionally the burden of proof is higher in a disciplinary proceeding than in a civil action.

4. The respondent was not charged with a violation of Rule 1.17(a)(1) of art. V of the Supreme Court Rules. We note that his failure to withdraw from representing the client once sexual relations began may be a violation of that rule as well.

(2) the client consents after consultation."

As we noted in *In the Matter of Robert F. DiPippo*, 678 A.2d 454 (R.I.1996), there is no specific prohibition contained within the Rules of Professional Conduct (or the Code of Professional Responsibility) regarding sexual activity between attorneys and their clients. However, any attorney who practices in the area of domestic relations must be aware that the conduct of the divorcing parties, even in a divorce based on irreconcilable differences (a so-called no-fault divorce) may have a significant impact on that client's ability to secure child custody and/or may materially affect the client's rights regarding distribution of marital assets. An attorney who engages in sexual relations with his or her divorce client places that client's rights in jeopardy. The lawyer's own interest in maintaining the sexual relationship creates an inherent conflict with the obligation to represent the client properly. When an attorney represents a divorce client in a case in which child custody, support, and distribution of marital assets are at issue, the attorney must refrain from engaging in sexual relations with the client or must withdraw from the case.

We note that although the respondent's conduct may have placed his client's case in jeopardy, no actual adverse effect on the outcome of the client's case resulted. Accordingly we accept the recommendation of the board and impose the sanction of public censure upon the respondent. Had the client's case actually been prejudiced by the respondent's conduct, a more serious sanction may have been appropriate.