In the Matter of the DISCIPLINE OF
John J. SIMPSON, as an
Attorney at Law.

No. 17048.

Supreme Court of South Dakota.

Argued Sept. 18, 1990.

Decided April 3, 1991.

R. James Zieser, Tyndall, for Disciplinary Bd.

Robert D. Hofer, Pierre, for Simpson.

BOGUE, Circuit Judge.

John R. Simpson (Simpson), a member of the South Dakota bar since 1958, failed to file federal income tax returns and South Dakota state sales tax returns from 1965 through 1988. He pled guilty to one count of engaging in a business without a sales tax license, SDCL 10–45–48.1(9), a Class 6 felony. He received a suspended imposition of sentence and was ordered to make restitution to the State of South Dakota with interest and penalties. This court referred the matter to the Disciplinary Board, SDCL 16–19–39, which filed a report with the court recommending Simpson's disbarment. We suspend Simpson from the practice of law for a two year period retroactive to the date of his suspension during the investigation of this case.

Simpson has practiced law for over twenty-five years. Until this matter, there has been no indication of any impropriety, nor have any client complaints been filed against him. The record in this case contains petitions and letters supporting him from citizens and clients in the geographical area of his practice who have full knowledge of the charges against him.

In the past attorneys have been disbarred for attempting to sell mortgaged property, the commission of felonies involving fraud, fraudulent tax returns, and taking clients' money from a trust account. There have also been cases of suspensions granted to attorneys for illegal use of controlled substances, lying under oath to grand juries, and the willful failure to file tax returns; and there have been other suspensions over the years dealing with attorneys for various acts, which have either not been felonies, or reported as felonies, nor dealt with as such.

 There are two goals of disciplinary proceedings: 1) the protection of the public from further fraudulent, unethical or incompetent activities involving this attorney; and 2) the preservation of the image and integrity of the attorneys, the bar association and the legal profession as a

whole. The real and vital issue to be determined is whether or not the accused, from the whole evidence as submitted, is a fit and proper person to be permitted to continue in the practice of law.

The purpose of this action is not to give a punishment. Punishment for any criminal activity is handled in sentencing and should include repayment of back taxes which are due, with interest and/or penalties, whether they be for state sales tax or federal income tax.

■ In this case, Simpson did not file a tax return for sales tax, obtain a sales tax license, or collect or remit any sales tax from 1965, the inception of the sales tax on attorneys' services, through 1988. These are continuing legal violations and a separate unlawful activity for each year. Initially such activities were misdemeanors, not felonies. *See*, SDCL 10–45–48 (Repealed by SL 1984, ch. 86 § 2). The length of time this activity has gone on is not essential to the determination of whether Simpson is a fit and proper person to continue practicing law. It may be an aggravating factor in this instance. The length of time certainly is not a credit to Simpson, to the bar association, or legal profession as a whole. However, the failure to file a sales tax return or to obtain a sales tax license did not involve a client's funds and did not involve, in this case, misappropriation of tax funds. There is no indication that Simpson collected the tax and then used it to his own advantage. On the contrary, no tax was ever collected. Simpson will be making up the tax that should have been collected from clients, who otherwise would have paid it. It seems inconceivable that Simpson would allow this to continue, since simply obtaining a license and properly withholding at any time after his initial failure to do so, would not have placed as large a financial burden upon him. But the length of time involved continues to add to his financial discomfort and that of his family.

Protecting the citizens of this state from Simpson's failure to report sales tax has amply been taken care of. At this time, Simpson has a sales tax license, continues to file reports and will, of course, be monitored by the Department of Revenue in the future. The amount of loss will be made up by Simpson to the public, with interest and penalty, and the public will no longer be at a loss for its funds.

As inconceivable as it was for Simpson to allow this to continue, it is just as inconceivable that the Department of Revenue for over twenty-five years has never thought to check the active members of the bar association for a sales tax license number and report. It seems to be an obvious and simple matter, that any professional person's name, address and location can be obtained from the professional organization headquarters, and should be routinely obtained by the Department in a simple cross-check to determine if a sales tax license exists, if reports have been received, and, if not, why.

Another question is whether the admission to the failure to file federal income tax also reflects in this matter upon the image of the bar association, the lawyers, and the profession. It does. However, the federal government is quite capable of taking care of its own activities. It has not to this time, to the knowledge of this court, sought to bring any felony charges against Simpson or to prosecute him in any criminal matter. It could do so at any time. In addition, the failure to file returns has not adversely affected Simpson's ability to practice in a courtroom, to give advice, or to draw documents, prepare instruments and to represent his clients. Nor would it appear to affect him in the future should he continue the practice of law.

The Disciplinary Board has recommended that Simpson be disbarred. Such a recommendation is not taken lightly. An attorney, however, who used illegal drugs and lied to a grand jury was permitted, after a period of suspension, to continue practice. Such usage most likely resulted in a deficiency of the ability of that attorney to function properly and correctly, and serious doubt was cast upon his ethical ability to continue within the community of the profession. It is difficult, therefore, in this case to find it necessary to disbar Simpson.

There was no willful fraud, by active fraudulent testimony or submission of false returns or use of tax funds in a fraudulent manner by Simpson. The activity, itself, did not in any way diminish his capacity to perform his work. The record reflects adequate, unchallenged community support from clients and the public of his abilities and continued service to the community for over more than twenty-five years. Consideration of these factors lead this court to believe that in this case the proper discipline should be a suspension, rather than disbarment. Simpson has injured the image and integrity of the legal profession, but the public is not in need of protection from him. His age, past service, reputation and support in his community weigh heavily in his favor. However, an attorney is and should be held to a higher standard than the general public and the profession is entitled to know there is a consequence when that standard is not met.

Therefore, Simpson is suspended from the practice of law for two years retroactive to the date of his suspension during this investigation in April of 1990.

HENDERSON, J., and MORGAN, Retired J., specially concur.

WUEST, and SABERS, JJ., dissent.

AMUNDSON, J., not having been a member of the Court at the time this action was submitted to the Court, did not participate.

BOGUE, Circuit Judge, for MILLER, C.J., disqualified.

HENDERSON, Justice (specially concurring).

Although I agree with the ultimate discipline in this case, I enter a written concurrence, inter alia, for the reason that there are no South Dakota citations by way of Supreme Court decisions set forth herein. Therefore, a reliance upon settled authority in this Court is open for question. In my opinion, this should not be.

The purpose of disciplinary proceedings is not to punish but to remove from the profession those attorneys whose misconduct has proven them unfit to be entrusted with the duties and responsibilities belonging to the office of an attorney so that the public may be protected from further wrongdoing. *In re Weisensee*, 88 S.D. 544, 224 N.W.2d 830 (1975); *In re Rude*, 88 S.D. 416, 221 N.W.2d 43 (1974); *In re Van Ruschen*, 38 S.D. 254, 160 N.W. 1006 (1917). Therefore, Simpson should not be "punished" but, rather, it should be determined if he is professionally fit to practice law.

Simpson has practiced law for over 30 years in South Dakota. There has not been a complaint filed against him, in all that time, questioning his honesty, integrity or ability. Simply put, neither the public, nor any of his clients, have needed to be protected from the unethical conduct of Attorney Simpson.

Attorney Simpson did not collect the tax and retain it and then fail to turn it in to the Department of Revenue; rather, he simply did not exercise his required statutory duty to be a "tax collector" for the Department of Revenue. Therefore, he has not been "dishonest" nor "unethical;" rather, he has violated a statutory duty to be a "tax collector." It should be noted that he instituted procedures to comply with the state sales tax law, obtained a sales tax license, and filed reports. Thus, it is obvious that he genuinely realizes that this is a legal obligation which absolutely must be complied with.

In essence, we are not here judging a man who is unethical or a thief.

Seventh Judicial Circuit Judge Davis suspended an imposition of sentence and placed Attorney Simpson on probation for a period of four years. He answered in a court of law for his wrongdoing and an Order was entered against him on February 8, 1990. Conditions included making restitution to the State of South Dakota "... in such amount of sales tax, penalty and interest as is finally determined through administrative proceedings or in a Court of competent jurisdiction, to be due and owing and that a definite plan shall be developed and complied with." Therefore, that Circuit Court Order is in effect and

should follow its jurisdictional sequence to finality. Rehabilitation is one of the goals of the justice system in South Dakota. *State v. Weiker*, 342 N.W.2d 7, 11–12 (S.D. 1983).

Under SDCL 16–19–35, there are five types of discipline authorized concerning attorneys. This special writer fully appreciates that the ultimate discipline of an attorney is vested in the Supreme Court of this state, with the exception of subsection 5 which provides for "Private reprimand" by the Disciplinary Board.

*In the Matter of the Discipline of Stanton*, 446 N.W.2d 33 (S.D.1989) we held:

> We need not give deference to Referee's or Board's recommendations for sanctions. The ultimate decision for discipline of members of the State Bar rests with this Court.

Bar associations' recommendations may come and go *, lawyers down through the decades may trod upon the legal scene, referees may be appointed or not appointed, but in the end, with the exception noted above, it is the Supreme Court of this state, and its five Justices, who decide the type of discipline which should be administered.

Concerning the alleged income tax violations, Simpson has been convicted of nothing with respect thereto. Were he so convicted, this Court could consider *Weisensee*. Therein, the attorney was convicted for willful failure to file an income tax return. We held that he should be suspended from practice for three years. Here, we are suspending Simpson for two years and he has never been convicted of failing to file an income tax return. *See, Matter of Discipline of Bergren*, 455 N.W.2d 856 (S.D. 1990) wherein an attorney was suspended for one year for professional misconduct due to various sexual contacts and conduct with clients.

When this case was argued, counsel for the Board made statements that Simpson had filed his income tax returns "now" and "... has no liability, criminally or civilly to the United States government...." If those are not his exact words, I beg his forgiveness but this is what I wrote down during argument.

From *all* argument at the formal disciplinary hearing before the Supreme Court of this state, it was generally agreed that John Simpson had made his peace with the United States government.

Simpson's demeanor, for failing to be a state tax collector, is one of deep regret and remorse. He is very sorry that he failed to comply with the state law. But this does not make him a crook. He is, simply, not an individual from whom the public should be protected against.

There is much to be said on the basic goodness of John Simpson. The record strongly reflects that he is a man of strong compassion for those people confronted with serious legal problems, by representing them for nothing. I am reminded of Justice Oliver Wendell Holmes who expressed: "We are not mere grubbers in the muckheaps of the world." Law, and the practice thereof, is not a commercial enterprise. Good lawyers will defend the weak, even though they are not paid.

John Simpson has a long history of helping Native Americans and defending juvenile proceedings on a pro-bono basis. This Court has been furnished with a plethora of petitions, letters and statements in general support of permitting him to continue to practice law. He spent a number of years as a tireless coach and advisor for young people in baseball programs. He was involved in numerous community affairs. The lawyers in the entire region speak highly of him and represent to the Court that he is a man of high principles. He is a devoted Christian and family man and I cannot bring myself to vote to disbar this man when he has lived such a good life.

I am authorized to state that MORGAN, Retired Justice, joins this special writing.

---

* *See, In re Discipline of Draeger*, 463 N.W.2d 346 (S.D.1990), wherein we expressed we would give careful consideration to the Board's judgment but we are not bound by its judgment, *citing In re Husby*, 426 N.W.2d 27, 28 (S.D.1988).

WUEST, Acting Chief Justice (dissenting).

I will not rehash the facts and law because that has been adequately covered by the writings of other members of the court. However, in my opinion, any lawyer who fails to file state sales tax returns and federal income tax returns for more than twenty-five years is incompetent to practice law.

If he will not comply with the law, how can we expect him to counsel his clients to observe it? If he neglects his one profession, as illustrated, won't he neglect his clients as well? Should we wait for client neglect to surface? It took more than twenty-five years to discover his failure to file state sales tax returns—a felony.

He and members of his family wept at the hearing, and I have a great deal of compassion for his family and, in a sense, for him. But, we owe a responsibility to the public. Therefore, my vote is for the public: disbarment.

SABERS, Justice (dissenting).

I dissent.

I support the recommendation of the Disciplinary Board of the State Bar of South Dakota to disbar Simpson because:

(1) Simpson failed to file South Dakota state sales tax returns and federal income tax returns from 1965 through 1988.

(2) Simpson pled guilty to one count of engaging in business without a sales tax license in violation of SDCL 10–45–48.1(9). This is a Class 6 felony and a serious crime within the definition of SDCL 16–19–36.

(3) Even now, Simpson is using the statute of limitations to prevent the State of South Dakota from collecting sales taxes for the period from 1965 through 1980.

(4) In addition to protecting the public from further fraudulent, unethical or incompetent activities, the goals of disciplinary proceedings include preserving the image and integrity of the bar association and the legal profession. Very simply, the image and integrity of the legal profession is damaged every time a court permits an attorney guilty of such serious misconduct to practice law again. This case presents an opportunity to uphold the image and integrity of the profession, but we have dropped the ball. In fact, the image and integrity of the legal profession itself may not recover if Simpson is permitted to practice again.

(5) His misconduct not only adversely affects the image and integrity of the legal profession, it totally violates the public trust. For 23 years, Simpson failed to do what he was duty bound to encourage his clients to do. As a lawyer, he knew he was in willful and continuous violation of both state and federal statutes. Such dishonesty and unethical misconduct should preclude him from practicing law.